☐ Check if this is an amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

| | |
|---|---|
| 1. **Debtor's name** | Blue Man International, LLC |

**2. Debtor's unique identifier**

**For non-individual debtors:**

☑ Federal Employer Identification Number (EIN)    2 0 – 1 0 0 1 9 1 9

☐ Other _____. Describe identifier _____.

**For individual debtors:**

☐ Social Security number:    xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

**3. Name of foreign representative(s)**

Cirque du Soleil Canada Inc.

**4. Foreign proceeding in which appointment of the foreign representative(s) occurred**

Proceeding under Sections 9, 11, 11.51, 11.52, and 23 of the Companies' Credit Arrangement Act pending before the Superior Court of Quebec, Commercial Division

**5. Nature of the foreign proceeding**

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6. Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

**7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

**8. Others entitled to notice**    Attach a list containing the names and addresses of:

(i)    all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)   all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)  all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9. Addresses**

Country where the debtor has the center of its main interests:

Canada

Debtor's registered office:

630 Flushing Avenue Suite 500
Number    Street

P.O. Box

Brooklyn, New York                         11206
City       State/Province/Region    ZIP/Postal Code

United States
Country

Individual debtor's habitual residence:

Number    Street

P.O. Box

City       State/Province/Region    ZIP/Postal Code

Country

Address of foreign representative(s):

8400, 2e Avenue
Number    Street

P.O. Box

Montréal, Quebec              H1Z    4M6
City       State/Province/Region    ZIP/Postal Code

Canada
Country

**10. Debtor's website** (URL)    https://www.cirquedusoleil.com/

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

    ☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ☐ Partnership

    ☐ Other.  Specify: _____

☐ Individual

| 12. Why is venue proper in *this district*? | Check one: |
|---|---|

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:
Chapter 15 cases of affiliates are pending in this district.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✖ /s/ Stéphane Lefebvre        Stéphane Lefebvre
Signature of foreign representative      Printed name

Executed on   07/01/2020
       MM / DD / YYYY

✖ _____      _____
Signature of foreign representative      Printed name

Executed on _____
       MM / DD / YYYY

**14. Signature of attorney**

✖ /s/ Laura Davis Jones      Date   07/01/2020
Signature of Attorney for foreign representative      MM / DD / YYYY

Laura Davis Jones
Printed name

Pachulski Stang Ziehl & Jones LLP
Firm name

919 North Market Street
Number     Street

Wilmington             DE      19801
City               State     ZIP Code

(302) 652-4100          ljones@pszjlaw.com
Contact phone           Email address

2436               DE
Bar number          State

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) |  |
| CDS U.S. HOLDINGS, INC., *et al.*, | ) | Case No. 20-_____ (__) |
|  | ) |  |
| Debtors in a Foreign Proceeding,[1] | ) |  |
|  | ) | (Joint Administration Requested) |
|  | ) |  |

## CONSOLIDATED VERIFIED LIST
## PURSUANT TO FED. R. BANKR. P. 1007(a)(4), 1008, AND 2002(q)

Pursuant to Rules 1007(a)(4), 1008, and 2002(q), the attached list contemplates each of the following:

> (i) all persons or bodies authorized to administer foreign proceedings of the Debtors;
>
> (ii) all parties to litigation pending in the United States in which any Debtor is a party at the time of filing of the petition; and
>
> (iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

[1] The last four digits of Debtor CDS U.S. Holdings, Inc.'s tax identification number are (0086). Due to the large number of debtor entities in these chapter 15 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.omniagentsolutions.com/cirquedusoleil. The location of the Debtors' service address for purposes of these chapter 15 cases is: 8400, 2e Avenue Montréal, Quebec H1Z 4M6 Canada.

I declare under penalty of perjury under the laws of the United States of America that the information in the attached list is true and correct.

Cirque du Soleil Canada Inc.
Solely in its capacity as court-appointed Foreign Representative, and not in its personal or corporate capacity

Dated: July 1, 2020
Montreal, Quebec

/s/ Stéphane Lefebvre
By: Stéphane Lefebvre
Title: Chief Financial Officer
Cirque du Soleil Canada Inc.

<u>**List of Entities Entitled to Notice**</u>
<u>**Pursuant to Bankruptcy Rules 1007(a)(4) and 2002(g)**</u>

**All persons or bodies authorized to administer foreign proceedings of the Debtors.**

Cirque du Soleil Canada Inc.
8400, 2e Avenue
Montréal, Quebec H1Z 4M6
Canada

**All parties to litigation pending in the United States in which either Debtor is a party at the time of filing of the petition.**

The Mirage Casino-Hotel
3400 Las Vegas Boulevard South
Las Vegas, Nevada 89109

Tradewinds Logistics, Inc.
17435 Tiller CT
Westfield, IN 46074

Glenn Frank
Juggernaut Productions, Inc.
1 6000 Ventura Blvd., Suite 600
Encino, CA 91436

Janet Jackson
132 S. Rodeo Drive
Beverly Hills, CA 90212

Martin B. Greenbaum, ESQ.
Greenbaum Law Group LLP
170 Newport Center Drive, Suite 130,
Newport Beach, CA 92660

Lawlor Events Center
1884 N Virginia St
Reno, NV 89557

The Forum
3900 W Manchester Blvd
Inglewood, CA 90305

Richard L. Grant, Esq.
Grant Law, A Professional Law Corporation
15375 Barrance Parkway, suite A-208
Irvine, CA 92818

Baxter, Bailey & Associates
1630 Goodman Road East, Suite 1
Southaven, MS 38671

Caravan Supply chain
318 W Adams Suite 14C
Chicago, IL 60606

Truckee River Transport Corp
3292 Munsel Lake Road
Florence, OR 97439-9240

Timothy J. Myers
Taylor Law Partners, LLP
P.O. Box 8310
Fayetteville, AR 72703

Michael J. Plank, Esq
Hicks & Brasier, PLLC
2630 S Jones Blvd
Las Vegas, NV 89146

Treasure Island LLC
3300 S Las Vegas Blvd
Las Vegas, NV 89109

Peter A. Sartes, Esq
Tragos, Sartes & Tragos, PLLC
601 Cleveland Street, suite 800
Clearwater, FL 33755

TBDG Acquisitions LLC
3225 South MacDill Ave, suite 129-#101
Tampa. FL 33629-8171

City of Tampa
Gina K. Grimes, City Attorney
Old City Hall, 5th floor
315 E. Kennedy Blvd.
Tampa, FL 33602

Occupational Safety and Health Appeals Board Occupational Safety and Health Appeals Board
2520 Venutre Oaks Way, suite 300
Sacramento, CA 95833

Division of Occupational Safety and Health San Francisco District Office
455 Golden Gate Avenue, suite 9516
San Francisco, CA 94102

Westgate Resorts
5601 Windhover Drive
Orlando, FL 32819

**All entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.**[2]

The list of parties against whom provisional relief is sought may be accessed free of charge on the Debtors' website:  www.omniagentsolutions.com/cirquedusoleil

---

[2] The information set forth therein is based on the Foreign Representative's review of the Debtors' books and records. The Foreign Representative reserves the right to modify or supplement any of the information provided, effective *nunc pro tunc* to the Petition Date.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| CDS U.S. HOLDINGS, INC., *et al.*, | Case No. 20-_____ (__) |
| Debtors in a Foreign Proceeding,[1] | |
| | (Joint Administration Requested) |

## CORPORATE OWNERSHIP STATEMENT

The following corporate ownership statement is made pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure:

- With the exception of non-wholly owned Debtors and Cirque du Soleil GP Inc., the Debtors are directly or indirectly wholly owned by CDS U.S. Holdings, Inc. or CDS Canadian Holdings, Inc.

- Cirque du Soleil Holdings L.P. owns 100% of the equity interests of CDS U.S. Holdings, Inc. and CDS Canadian Holdings, Inc.

- The following corporate entities own 10% or more of a class of Cirque du Soleil GP Inc.'s equity interests:

  o CMF Circus L.P.;

  o Caisse de depot et placement du Quebec;

  o TPG Advisors VII-AIV, Inc.

---

[1] The last four digits of Debtor CDS U.S. Holdings, Inc.'s tax identification number are (0086). Due to the large number of debtor entities in these chapter 15 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.omniagentsolutions.com/cirquedusoleil. The location of the Debtors' service address for purposes of these chapter 15 cases is: 8400, 2e Avenue Montréal, Quebec H1Z 4M6 Canada.

- The following corporate entities own 10% or more of the non-wholly owned Debtors' equity interests:
    - Hudson LV, LLC (Joie de Vie, LLC);
    - CDS Canada 1 SCSP (9415-8219 QUEBEC INC.);
    - CDS Canada 2 SCSP (9415-8227 QUEBEC INC.);
    - CDS Canada 3 L.P. (9415-8235 QUEBEC INC.).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Cirque du Soleil Canada Inc.
Solely in its capacity as court-appointed Foreign Representative, and not in its personal or corporate capacity

Dated: July 1, 2020
      Montreal, Quebec

<u>/s/ Stéphane Lefebvre</u>
By:  Stéphane Lefebvre
Title:  Chief Financial Officer
Cirque du Soleil Canada Inc.

## SUPERIOR COURT
## (Commercial Division)

CANADA
PROVINCE OF QUÉBEC
DISTRICT OF MONTREAL

No.:     500-11-058415-205

DATE:    June 30, 2020

---

**BEFORE THE HONOURABLE LOUIS JOSEPH GOUIN, J.S.C.**

---

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C 36, AS AMENDED:**

**CIRQUE DU SOLEIL CANADA INC.**

and

**THE OTHER APPLICANTS LISTED IN SCHEDULE "A" HEREOF**

       Applicants

**ERNST & YOUNG INC.**
       Monitor

---

### FIRST DAY INITIAL ORDER

---

**ON READING** the Applicants' *Application for the Issuance of a First Day Initial Order, an Amended and Restated Initial Order and an Order Approving and Ratifying the Execution of a Stalking Horse Asset Purchase Agreement and Approving a Sale and Investment Solicitation Process* pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36 (as amended the "**CCAA**") and the exhibits, the affidavit of Stéphane Lefebvre filed in support thereof (the "**Application**"), the consent of Ernst & Young Inc. ("**EY**") to act as monitor and the Pre-Filing Report of EY in its capacity as proposed monitor, relying upon the submissions of counsel and being advised that the interested parties, including secured creditors, who are likely to be affected by the charges created herein were given prior notice of the presentation of the Application;

**GIVEN** the provisions of the CCAA;

**GIVEN** that Section 11.001 CCAA provides for the following:

**Relief reasonably necessary**

11.001 An order made under section 11 at the same time as an order made under subsection 11.02(1) or during the period referred to in an order made under that subsection with respect to an initial application <u>shall be limited to relief that is reasonably necessary for the continued operations of the debtor company in the ordinary course of business during that period.</u>

(the Court <u>underlines</u>)

**GIVEN** that the Court endorses the Ontario Chief Justice Geoffrey B. Morawetz' s comments in *Lydian International Limited (Re)*[1] with respect to this Section 11.001 CCAA;

**WHEREFORE, THE COURT**:

1.     **GRANTS** in part the Application.

2.     **ISSUES** an order pursuant to the CCAA (the "**First Day Order**"), divided under the following headings:

- Service
- Application of the CCAA and Procedural Consolidation
- Effective Time
- Plan of Arrangement
- Stay of Proceedings against the Debtors and the Property
- Stay of Proceedings against the Directors and Officers
- Possession of Property and Operations
- No Exercise of Rights or Remedies;
- No Interference with Rights
- Continuation of Services
- Non-Derogation of Rights
- Key Employee Retention Plan
- Directors' and Officers' Indemnification and Charge
- Restructuring
- Powers of the Monitor
- Priorities and General Provisions Relating to CCAA Charges
- Center of Main Interest
- General

**Service**

3.     **DECLARES** that sufficient prior notice of the presentation of the Application has been given by the Applicants to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

---

[1] 2019 ONSC 7374, paragr. 26, 30, 31 and 32.

**Application of the CCAA and Procedural Consolidation**

4.      **DECLARES** that each of the Applicants is a debtor company to which the CCAA applies. Although not Applicants, the limited partnerships listed in Schedule "B" hereof (together with the Applicants, the "**Debtors**") shall also enjoy the benefits of the protection and authorizations provided by this First Day Order as well as any other order which may be rendered by this Court in the context of these procedings.

5.      **ORDERS** the consolidation of these CCAA proceedings in respect of the Applicants and **ORDERS** that such consolidation shall be for administrative purposes only and shall not effect a consolidation of the assets and property of each of the Applicants including, without limitation, for the purposes of any Plan (as defined below) that may be thereafter proposed.

**Effective time**

6.      **DECLARES** that this First Day Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of this First Day Order (the "**Effective Time**").

**Plan of Arrangement**

7.      **DECLARES** that the Applicants shall have the authority to file with this Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA.

**Stay of Proceedings against the Debtors and the Property**

8.      **ORDERS** that, until and including July 10, 2020 (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Debtors, or affecting the Debtors' business operations and activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph 17 herein below except with leave of this Court. Any and all Proceedings currently under way against or in respect of the Debtors or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

9.      The rights of Her Majesty in right of Canada and Her Majesty in a right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 CCAA.

**Stay of Proceedings against the Directors and Officers**

10.     **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA or with leave of the Court, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Debtors nor against any person deemed to be a director or an officer of the Debtors under subsection 11.03(3) CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Debtors where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

**Possession of Property and Operations**

11.     **ORDERS** that, the Debtors shall remain in possession and control of their present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof (collectively the "**Property**"), the whole in accordance with the terms and conditions of this First Day Order.

12.     **ORDERS** that the Debtors and, with respect to the Cash Pooling Agreement, the Cash Management Parties (as defined below) shall be entitled to continue to utilize the central cash management system currently in place (including any Cash Pooling Arrangement (as defined below) and any other arrangements ancillary thereto to which any of the Debtors may be party to) as described in the Application or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by any of the Debtors or any of the Cash Management Parties of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined), pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

13.     **ORDERS** that the Cash Management Agreement dated as of July 8, 2015 (as amended, supplemented or restated, from time to time, the "**Cash Pooling Agreement**") entered into between the Caisse Centrale Desjardins (now known as Fédération des Caisses Desjardins du Québec) ("**Federation**"), la Caisse d'Économie Solidaire Desjardins ("**CESD**"), Desjardins Bank ("**Desjardins US**" and collectively with Federation and CESD, the "**Desjardins Group**") and certain Applicants and affiliates of the Applicants party thereto, as well as Les Films Lampo Di Vita Inc., Gaïa Luxembourg S.A., Cirque du Soleil HK Limited, Sundust Limited, Cirque du Soleil Australia PTY Ltd., Gestion Cirque du Soleil S.E.C., CDS Luxembourg Holdings, S.A.R.L. and 9553266 Canada Inc. (collectively, the "**Cash Management Parties**") is hereby ratified, together with the draft amendment to the Cash Pooling Agreement filed as Exhibit R-7(b) to the Application

which is also ratified, and each party thereto shall continue to benefit from their rights thereunder until further order from this Court.

14.  **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiving order filed pursuant to the BIA (as defined below) in respect of any of the Cash Management Parties and any order issued pursuant to such petition or any assignment in bankruptcy made or deemed to be made in respect of any of the Cash Management Parties and (iii) the provisions of any federal or provincial statute in Canada, any rights or powers exercised or not (including any right of setoff or compensation, the whole notwithstanding any CCAA Charges (as defined below) created herein or other existing Encumbrances (as defined below)) that the Desjardins Group has under the Cash Management System or the Cash Pooling Agreement are to be binding on any trustee in bankruptcy that may be appointed and shall not be void or voidable nor deemed to be a preference, assignment, fraudulent conveyance, transfer at undervalue or other reviewable transaction under the BIA or any other applicable federal or provincial legislation.

15.  **ORDERS** that the Debtors shall be entitled but not required to pay the following expenses whether incurred prior to or after this First Day Order:

  (a)  all outstanding and future wages, salaries, bonuses, commissions, employee contributions, benefits, vacation pay, termination and severance obligations, expenses and other amounts otherwise payable to present or former employees on or after the date of this First Day Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements, including an amount of USD $651,062 to present or former employees in respect of accrued salary, vacation, bonuses, commissions, premiums and other benefits; and

  (b)  the fees and disbursements of any employees, independent contractors, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by the Debtors, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this order and these proceedings, at their standard rates and charges; and

  (c)  all expenses and payments on account of ticket reimbursement, to the extent deemed appropriate in the circumstances to the maximum amount of USD $2,500,000.

16. **ORDERS** that, except as otherwise provided to the contrary herein, the Debtors shall be entitled but not required to pay all reasonable expenses incurred by the Debtors or affiliates of the Debtors in carrying on the Business in the ordinary course after this First Day Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

   (a) all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business of the Debtors or affiliates of the Debtors including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services to the extent deemed appropriate in the circumstances; and

   (b) payment for goods or services actually supplied to the Debtors or affiliates of the Debtors following the date of this Order.

**No Exercise of Rights or Remedies**

17. **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Debtors, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

18. **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Debtors or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the Debtors become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of the Debtors, the period between the date of the First Day Order and the day on which the Stay Period ends shall not be calculated in respect of the Debtors in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

**No Interference with Rights**

19. **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, except with the written consent of the Debtors and the Monitor (as defined below), or with leave of this Court.

**Continuation of Services**

20.     **ORDERS** that during the Stay Period and subject to paragraph 22 hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services (including pooling arrangements), payroll services, insurance, transportation, utility or other goods or services made available to the Debtors, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Debtors, and that the Debtors shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the First Day Order are paid by the Debtors, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Debtors, with the consent of the Monitor, or as may be ordered by this Court.

21.     **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Debtors on or after the date of this First Day Order, nor shall any Person be under any obligation on or after the date of the First Day Order to make further advance of money or otherwise extend any credit to the Debtors.

22.     **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by the Debtors with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the date of the First Day Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by Debtors and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the Debtors' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**Non-Derogation of Rights**

23.     **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of the Debtors shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of this First Day Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this First Day Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Key Employee Payments**

24.     **ORDERS** that the Debtors shall be entitled to pay an amount of up to CAD $550,000 to those key employees designated part of the Key Employee Retention Plan described in the Application and summarized in the table and draft letter filed under seal as Exhibit R-20.

**Directors' and Officers' Indemnification and Charge**

25.     **ORDERS** that the Debtors shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Debtors after the Effective Time, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross neglicence, wilful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

26.     **ORDERS** that the Directors of the Debtors shall be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of CAD $1,750,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph 25 of this First Day Order as it relates to obligations and liabilities that the Directors may incur in such capacity after the Effective Time. The Directors' Charge shall have the priority set out in paragraphs 37 and 38 of this First Day Order.

27.     **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph 25 of this First Day Order.

**Restructuring**

28.     **DECLARES** that, to facilitate the orderly restructuring of its business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, each of the Debtors shall have the right, subject to the approval of the Monitor or further order of the Court, to:

    (a)     permanently or temporarily cease, downsize or shut down any of its operations or locations as it deems appropriate and make provision for the consequences thereof in the Plan;

    (b)     terminate the employment of such of its employees or temporarily or permanently lay off such of its employees as it deems appropriate and, to the extent any

amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Debtors and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Debtors may determine; and

(c) subject to the provisions of section 32 CCAA, disclaim or resiliate, any of its agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Debtors and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan.

**Powers of the Monitor**

29. **ORDERS** that EY is hereby appointed to monitor the business and financial affairs of the Debtors as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

(a) shall (i) without delay, publish once a week for two (2) consecutive weeks or as otherwise directed by the Court, in LaPresse+ and the Globe and Mail National Edition, (ii) within five (5) business days after the date of this First Day Order, post on the Monitor's website at www.ey.com/ca/cirque a notice containing the information prescribed under the CCAA, (iii) make this First Day Order publicly available in the manner prescribed under the CCAA within five (5) business days after the date of this First Day Order, (iv) send, within ten (10) business days after the date of this First Day Order, in the prescribed manner, including by electronic transmission, a notice to all known creditors having a claim against the Debtors of more than $1,000, advising them that this First Day Order is publicly available, and (v) within five (5) business days after the date of this First Day Order, prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

(b) shall monitor the Debtors' receipts and disbursements;

(c) shall assist the Debtors, to the extent required, in dealing with their creditors and other interested Persons during the Stay Period;

(d) shall assist the Debtors, to the extent required, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

(e)    shall advise and assist the Debtors, to the extent required, to review the Debtors' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(f)    shall assist the Debtors, to the extent required, with their restructuring efforts and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g)    shall report to the Court on the state of the business and financial affairs of the Debtors or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(h)    may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of this First Day Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(i)    may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under this First Day Order or under the CCAA;

(j)    may give any consent or approval as may be contemplated by this First Day Order or the CCAA;

(k)    may perform such other duties as are required by this First Day Order or the CCAA or by this Court from time to time; and

(l)    may file a motion pursuant to section 243 of the BIA seeking its appointment as receiver over *de minimis* property of the Debtors (in such capacity, the "**Receiver**" and the proceedings thereunder, the "**Receivership Procedings**") for the sole purpose of allowing the employees of the Debtors to benefit from those payments provided under the *Wage Earner Protection Program Act* (S.C. 2005, c. 47, s. 1);

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Debtors, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Debtors nor shall the Monitor be deemed to have done so.

30.    **ORDERS** that the Debtors and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the First Day Order shall

forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Debtors in connection with the Monitor's duties and responsibilities hereunder.

31.     **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Debtors with information in response to requests made by them in writing addressed to the Monitor and copied to the Debtors' counsel. The Monitor shall not be responsible or liable for any such information provided in accordance with this First Day Order or with the CCAA, unless expressly provided in paragraph 33 hereof. In the case of information that the Monitor has been advised by the Debtors is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Debtors unless otherwise directed by this Court.

32.     **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Debtors or continues the employment of the Debtors' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

33.     **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least seven (7) days notice to the Monitor and its counsel.  The entities related to or affiliated with the Monitor referred to in subparagraph 29(h) hereof and the legal counsels referred to in subparagraph 29(i) shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

34.     **ORDERS** that, subject to the powers granted to the Monitor pursuant to the terms of this First Day Order, nothing contained herein shall require the Monitor to occupy or to take control, or to otherwise manage all or any part of the Property. The Monitor shall not, as a result of this First Day Order, be deemed to be in possession of any of the Property within the meaning of environmental legislation, the whole pursuant to the terms of the CCAA.

35.     **ORDERS** that the Debtors shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsels, the Receiver, the Receiver's legal counsel and the Debtors' legal counsel (collectively, the "**Professionals**"), directly related to these proceedings, the proceedings to be initiated by the Foreign Representative (as defined below) under Chapter 15 of Title 11 of the United States Code (the "**Chapter 15 Proceedings**"), the Receivership Proceedings the Plan and the Debtors' restructuring, whether incurred before or after the First Day Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

36.     **DECLARES** that the Professionals, as security for the professional fees and disbursements incurred both before and after the making of this First Day Order and directly related to these proceedings, the Chapter 15 Proceedings, the Receivership Proceedings, the Plan and the Applicants' restructuring, be entitled to the benefit of and

are hereby granted a charge and security in the Property to the extent of the aggregate amount of CAD $1,000,000 (the "**Administration Charge**"), having the priority established in paragraphs 37 and 38 of this First Day Order.

**Priorities and General Provisions Relating to the CCAA Charge**

37.   **DECLARES** that the priorities of the Administration Charge and the Directors' Charge (collectively, the "**CCAA Charges**") as between them with respect to any Property to which they apply, shall be as follows:

(a)   first, the Administration Charge; and

(b)   second, the Directors' Charge.

38.   **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances.

39.   **ORDERS** that, except as otherwise expressly provided for herein, the Debtors shall not grant any Encumbrances in or against any Property that rank in priority to, or pari passu with, any of the CCAA Charges unless the Debtors obtain the prior written consent of the Monitor and the prior approval of the Court.

40.   **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Debtors, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

41.   **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of such CCAA Charges, as applicable, shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: (i) these proceedings and the declaration of insolvency made herein; (ii) any petition for a receiving order filed pursuant to the BIA in respect of any of the Debtors or any receiving order made pursuant to any such petition or any assignment in bankruptcy made or deemed to be made in respect of any of the Debtors; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds any of the Debtors (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

(a)   the creation of any of the CCAA Charges shall not create or be deemed to constitute a breach by any of the Debtors of any Third Party Agreement to which it is a party; and

(b)     any of the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

45.     **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiving order filed pursuant to the BIA in respect of any of the Debtors and any receiving order allowing such petition or any assignment in bankruptcy made or deemed to be made in respect of any of the Debtors, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by any of the Debtors pursuant to this First Day Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

42.     **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Debtors and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Debtors, for all purposes.

**Center of Main Interest**

43.     **DECLARES** that the Debtors' centre of main interest is located in Montreal,Quebec, Canada.

**General**

44.     **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisers of the Debtors or of the Monitor in relation to the Business or Property of the Debtors, without first obtaining leave of this Court, upon five (5) days written notice to the Debtors' counsel and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

45.     **DECLARES** that the First Day Order and any proceeding or affidavit leading to the First Day Order, shall not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

46.     **DECLARES** that, except as otherwise specified herein, the Debtors and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Debtors and that any such service shall be deemed to be received on the date of delivery if by

personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

47.     **DECLARES** that the Debtors and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Debtors shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter.

48.     **ORDERS** that Exhibits R-6, R-12, R-13, R-18(B), R-20, R-21 and R-22 filed in support of the Application as well as Appendix D to the Pre-Filing Report of EY be kept confidential and under seal until further order of this Court.

49.     **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on the solicitors for the Debtors and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the monitor or its attorneys, save and except when an order is sought against a Person not previously involved in these proceedings.

50.     **DECLARES** that the Applicants or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of this First Day Order on notice only to each other.

51.     **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon three business (3) days notice to the Debtors, the Monitor and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order, and such application or motion shall be filed during the Stay Period ordered by this First Day Order or such further comeback period as may be ordered by the Court, unless otherwise ordered by this Court.

52.     **DECLARES** that the First Day Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

53.     **DECLARES** that Cirque du Soleil Canada Inc. shall be authorized to apply, on behalf of the Debtors, as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement this First Day Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which Cirque du Soleil Canada Inc shall be the foreign representative of the Debtors (the "**Foreign Representative**"). All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to Cirque du Soleil Canada Inc. as may be deemed necessary or appropriate for that purpose.

54. **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the First Day Order.

55. **ORDERS** the provisional execution of the First Day Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever.

56. **WITHOUT COSTS.**

Montreal, June 30, 2020

_____ j.s.c

The Honourable Louis Joseph Gouin, j.s.c.

## SCHEDULE A
## LIST OF APPLICANTS

1. Cirque du Soleil GP Inc.
2. CDS Canadian Holdings, Inc.
3. Cirque du Soleil Canada Inc.
4. Cirque du Soleil Inc.
5. Cirque du Soleil Images Inc.
6. Cirque du Soleil Inspiration Inc.
7. CDS U.S. Holdings, Inc.
8. CDS U.S. Intermediate Holdings, Inc.
9. Cirque du Soleil Holding USA, Inc.
10. Cirque du Soleil (US), Inc.
11. Cirque du Soleil America, Inc.
12. VStar Entertainment Group, LLC
13. Cirque Dreams Holdings LLC
14. VStar Merchandising, LLC
15. VStar International, LLC
16. VStar Theatrical, LLC
17. VStar Touring, LLC
18. Cirque du Soleil Orlando, LLC
19. Cirque du Soleil Vegas, LLC
20. Cirque du Soleil Nevada, Inc.
21. Cirque du Soleil My Call, LLC
22. Velsi, LLC
23. Blue Man Inc.
24. Blue Man Group Holdings, LLC
25. Blue Man Group Records, LLC
26. Astor Show Productions, LLC
27. Blue Man Group Publishing, LLC
28. Blue Man Vegas, LLC
29. Blue Man Orlando, LLC
30. Blue Man Productions, LLC
31. Blue Man Chicago, LLC
32. 9415-8185 Québec Inc.
33. 9415-8219 Québec Inc.
34. 9415-8227 Québec Inc.
35. 9415-8235 Québec Inc.
36. Création 4U2C Inc.
37. Blue Man International, LLC
38. Cirque du Soleil Radio CT Holding, LLC
39. Cirque du Soleil Radio CT, LLC
40. The Works Entertainment, LLC
41. Cirque Theatrical, LLC
42. Cirque on Broadway, LLC
43. Joie de Vie, LLC

**SCHEDULE "B"**
**LIMITED PARTNERSHIP**

1. Cirque du Soleil Holdings L.P.
2. CDS Canada 3 L.P.
3. CDS Canada 4 L.P.
4. Blue Man Boston Limited Partnership
5. CDS Canada 1 SCSp (Luxembourg special limited partnership)
6. CDS Canada 2 SCSp (Luxembourg special limited partnership)